1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11  KARLA M. KREFT,                    )   Case No. SACV 07-350 JC
                                       )
12                     Plaintiff,      )
                                       )   MEMORANDUM OPINION
13            v.                       )
                                       )
14                                     )
    MICHAEL J. ASTRUE,                 )
15  Commissioner of Social            )
    Security,                          )
16                                     )
                       Defendant.      )
17  _____ )

18
19  **I.    SUMMARY**

20          On April 4, 2007,  plaintiff Karla M. Kreft ("plaintiff") filed a Complaint

21  seeking review of the Commissioner of Social Security's denial of plaintiff's

22  application for benefits.  The parties have filed a consent to proceed before a

23  United States Magistrate Judge.

24          This matter is before the Court on the parties' cross motions for summary

25  judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The

26  Court has taken both motions under submission without oral argument.  See Fed.

27  R. Civ. P. 78; L.R. 7-15; April 9, 2007 Case Management Order, ¶ 5.

28  ///

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is AFFIRMED.  The findings of the Administrative Law Judge are

3    supported by substantial evidence and are free from material error.[1]

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5    **DECISION**

6    In September 2003, plaintiff filed applications for Supplemental Security

7    Income benefits and Disability Insurance Benefits.  (Administrative Record

8    ("AR") 13, 48-50).  Plaintiff asserted that she became disabled on December 31,

9    1998, due to insulin dependent diabetes, major depression, anxiety, and

10   hypogloycemic unawareness.  (AR 64).

11   On June 15, 2005, an Administrative Law Judge (the "First ALJ") issued an

12   unfavorable decision.  (AR 462-70).  Plaintiff requested review of the First ALJ's

13   decision.  (AR 486).  The Appeals Council remanded the matter.  (AR 487-89).

14   On remand, a different Administrative Law Judge (the "ALJ") examined the

15   medical record and heard testimony from a medical expert, a vocational expert,

16   and plaintiff, who was represented by counsel, on March, 13, 2006.  (AR 652-

17   683).

18   On September 25, 2006, the ALJ determined that plaintiff was not disabled

19   through the date of the decision.  (AR 13-20).  Specifically, the ALJ found:

20   (1) plaintiff suffered from the following severe impairments:  diabetes mellitus,

21   rheumatoid arthritis, hypothyroidism and a depressive disorder secondary to her

22   medical condition (AR 16); (2) plaintiff's impairments or combination of

23   impairments did not meet or medically equal one of the listed impairments (AR

24

25

26   ───────────────

27   [1]The harmless error rule applies to the review of administrative decisions regarding
     disability.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196

28   (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social
     Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of
     application of harmless error standard in social security cases).

1  16); (3) plaintiff retained the residual functional capacity to perform light work [2]
2  (AR 16); (4) plaintiff could perform her past relevant work as a front office
3  receptionist of a dental office (AR 18-19); and (5) plaintiff could make a
4  successful adjustment to do other work that exists in significant numbers in the
5  national economy.  (AR 19).

6      The Appeals Council denied plaintiff's application for review.  (AR 6-8).

7  **III.    APPLICABLE LEGAL STANDARDS**

8      **A.    Sequential Evaluation Process**

9      To qualify for disability benefits, a claimant must show that she is unable to
10  engage in any substantial gainful activity by reason of a medically determinable
11  physical or mental impairment which can be expected to result in death or which
12  has lasted or can be expected to last for a continuous period of at least twelve
13  months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.
14  § 423(d)(1)(A)).  The impairment must render the claimant incapable of
15  performing the work she previously performed and incapable of performing any
16  other substantial gainful employment that exists in the national economy.  Tackett
17  v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

18      In assessing whether a claimant is disabled, an ALJ is to follow a five-step
19  sequential evaluation process:

20      (1)    Is the claimant presently engaged in substantial gainful activity?  If
21             so, the claimant is not disabled.  If not, proceed to step two.

22
23  ────────────

24      [2]Specifically, the ALJ determined that:  (i) plaintiff could lift and carry 10 pounds
    frequently and 20 pounds occasionally; (ii) plaintiff could occasionally climb stairs, bend, stoop,
25  kneel, crouch or crawl; (iii) plaintiff was restricted from climbing ladders/scaffolds, balancing,
    working at heights, and being around dangerous and fast moving machinery; (iv) plaintiff's
26  depression limited her to a work environment which did not require (a) hypervigilance; (b) being
    in charge of the safety operations of others; (c) intense interpersonal interactions; or (d) the
27  supervision of others; (v) plaintiff was restricted from jobs which require high production, quota
    or rapid assembly line work; and (vi) plaintiff was limited to a job having a moderate pace with
28  moderate supervision and moderate interaction with peers, coworkers and the public.  (AR 16).

(2)     Is the claimant's alleged impairment sufficiently severe to limit her ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)     Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)     Does the claimant possess the residual functional capacity to perform her past relevant work?[3]  If so, the claimant is not disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

---

[3]Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence."  20 C.F.R. §§ 404.1545(a), 416.945(a).

4

1  (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable
2  mind might accept as adequate to support a conclusion."  Richardson v. Perales,
3  402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a
4  mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing
5  Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

6       To determine whether substantial evidence supports a finding, a court must
7  "'consider the record as a whole, weighing both evidence that supports and
8  evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.
9  Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d
10  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming
11  or reversing the ALJ's conclusion, a court may not substitute its judgment for that
12  of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

13  **IV.   DISCUSSION**

14  **A.     The ALJ Properly Considered the Opinion of Plaintiff's Treating**
15  **         Psychiatrist**

16       Plaintiff alleges that the ALJ failed properly to consider the opinion of
17  treating psychiatrist, Dr. Khajavi.  (Plaintiff's Motion at 4).  This Court disagrees
18  and finds that the ALJ properly considered Dr. Khajavi's opinion.

19                 **1.     Relevant Evidence**

20       In January 2000, plaintiff underwent a consultative psychiatric evaluation
21  by Dr. Prastka.  (AR 185-87).  Plaintiff complained of depression.  (AR 185).  Dr.
22  Prastka diagnosed plaintiff with mood disorder secondary to her general medical
23  condition.  (AR 187).  He observed that plaintiff looked moderately depressed and
24  anxious, but that her intellectual functioning was unimpaired, and that she had the
25  ability to focus and maintain attention, and to understand, remember and follow
26  instructions.  (AR 186).  He determined that there was an objective basis to
27  determine that she was then at least temporarily mentally impaired for
28  employment.  (AR 187).

1    In February 2000, a state agency medical consultant concluded that plaintiff
2   had only slight impairment in functioning secondary to alleged depression.  (AR
3   217).  He opined that she had slight impairment in activities of daily living and
4   maintaining social functioning and no impairment in any other area of functioning.
5   (AR 221).  In October 2002, another state agency psychiatrist concluded that
6   plaintiff had mild impairments in activities of daily living, but moderate
7   impairments in social functioning and maintaining concentration, persistence and
8   pace.  (AR 249).

9    In September 2002, plaintiff's treating psychiatrist, Dr. Khajavi, who
10   worked at the Mental Health Association of Orange County ("Dr. Khajavi's
11   Clinic"), diagnosed plaintiff with major depressive disorder, recurrent, and
12   personality disorder, not otherwise specified, and noted that plaintiff's prognosis
13   was fair.  (AR 227, 229).  Dr. Khajavi reported that plaintiff was seen on a
14   monthly basis from January 2000 to at least September 2002.  (AR 227).  Dr.
15   Khajavi completed a mental disorder questionnaire form and a short-form
16   evaluation for mental disorders.  (AR 222-30 [Exhibit 8F]).

17    Dr Khajavi reported:  Plaintiff began treatment in the year 2000 due to
18   symptoms of depression and anxiety resulting from her diabetes.  (AR 222, 226,
19   230).  She received outpatient treatment and Zoloft, but was never hospitalized in
20   connection with her mental disorder.  (AR 222).  Plaintiff had some difficulty
21   keeping track of her appointments, frequently had to be rescheduled, but took
22   responsibility for setting appointments.  (AR 222, 225).  She always displayed
23   good grooming and hygiene.  (AR 222, 227).  Plaintiff was pleasant and
24   cooperative.  (AR 223, 227).  She interacted quite well with others.  (AR 225).
25   She had average intellectual functioning and good memory and judgment.  (AR
26   223).  Her concentration was fair, but she sometimes lost her train of thought and
27   needed to be prompted.  (AR 223).  Her concentration was impaired in the sense
28   that she had difficulty focusing and remembering what she was talking about at

times – related to her blood sugar level.  (AR 227).  She had periods of confusion due to fluctuations in her blood sugar level.  (AR 224, 227).  She had symptoms of depression including low motivation, hopelessness, low self-esteem, and poor concentration.  (AR 224).  She sometimes had difficulty with concentration and task completion.  (AR 225).  She was often distracted and tangential.  (AR 225, 228).  Plaintiff could follow simple directions, but was easily overwhelmed.  (AR 225).  Due to her condition, plaintiff might be easily overwhelmed in a high stress or fast paced work environment.  (AR 225).  Plaintiff's ability to make decisions was slow due to concentration and lack of confidence.  (AR 225).  Plaintiff's long term memory was good, and her short term memory was moderate.  (AR 227).  She was competent to manage funds on her own behalf.  (AR 226).

In the short-form evaluation, Dr. Khajavi checked boxes indicating that plaintiff had a "fair" ability to:  (1) understand, remember, and carry out complex instructions; (2) understand, remember, and carry out simple instructions; (3) maintain concentration, attention and persistence; (4) perform activities within a schedule and maintain regular attendance; (5) complete a normal workday and workweek without interruptions from psychologically based symptoms; and (6) respond appropriately to changes in a work setting.  (AR 229).  The evaluation form instructed that the term "fair" was to be used when "evidence support[ed] the conclusion that the individual's capacity to perform the activity [was] impaired" but that "the degree/extent of the impairment need[ed] to be further described." (AR 229).  Although, as noted above, Dr. Khajavi used the term "fair," the doctor did not further describe the degree/extent of plaintiff's impairments on the short-form evaluation.

Progress reports from Dr. Knight, another psychiatrist at Dr. Khajavi's Clinic, and Dr. Knight's assistant, show a generally normal mental status examination between July to September 2003.  (AR 355-64).  Plaintiff was diagnosed with depression, was found to have mild to moderate impairments in

functioning, and was treated with antidepressant medication.  (AR 355-64).  In October 2003, Dr. Knight, concluded that plaintiff was depressed due to her general medical condition and advised medication management.  (AR 370).  He reported that plaintiff was occasionally distracted but was cooperative, and was able to complete routine tasks, and to follow instructions.  (AR 369).

In November 2004, Dr. McGee, a clinical psychologist, conducted a psychological evaluation of plaintiff.  (AR 395-402).  Dr. McGee diagnosed plaintiff with depressive disorder, not otherwise specified.  (AR 400).  He noted that plaintiff evidenced mild cognitive limitations regarding her ability to work in that she displayed mild deficits in attention and concentration on some types of tasks.  (AR 400).  He observed that plaintiff was able to comply with instructions, and opined that she was capable of learning a routine, repetitive task.  (AR 400).

On March 16, 2006, Dr. Rath, the medical expert who testified at the administrative hearing, summarized the medical evidence relating to plaintiff's mental impairment.  (AR 668-70).  Dr. Rath referenced, inter alia, Dr. Khajavi's, assessments, including Dr. Khajavi's observation that confusion resulted from blood sugar level fluctuations.  (AR 669).  After taking such evidence into account, Dr. Rath opined that plaintiff should be placed in no more than a moderately stressful environment in terms of supervision, co-workers, and production quotas.  (AR 670).

### 2.    ALJ's Determination

The ALJ's decision contains the following discussion of Dr. Khajavi's opinion:

A treating source has submitted a mental assessment, reflecting [plaintiff]'s functioning as being "fair" in key areas, but the degree of impairment is not further quantified or otherwise explained.  The accompanying medical records indicated that [plaintiff] may be easily overwhelmed in a high stress or fast paced job.  The residual

8

1          functional capacity as assessed herein accommodates those

2          limitations.

3   (AR 18).

4          In the residual functional capacity determination, the ALJ found:

5          [Plaintiff]'s depression limits her to a work environment which does

6          not require hypervigilance or to be in charge of the safety operations

7          of others, or one requiring intense interpersonal interactions or to

8          supervise others.  She is restricted from jobs which require high

9          production, quota or rapid assembly line work, and is limited to one

10         having a moderate pace with moderate supervision and moderate

11         interaction with peers, coworkers and the public.

12  (AR 16).

13                  **3.    Relevant Law**

14         In Social Security cases, courts employ a hierarchy of deference to medical

15  opinions depending on the nature of the services provided.  Courts distinguish

16  among the opinions of three types of physicians:  those who treat the claimant

17  ("treating physicians") and two categories of "nontreating physicians," namely

18  those who examine but do not treat the claimant ("examining physicians") and

19  those who neither examine nor treat the claimant ("nonexamining physicians").

20  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A

21  treating physician's opinion is entitled to more weight than an examining

22  physician's opinion, and an examining physician's opinion is entitled to more

23  weight than a nonexamining physician's opinion.[4]  See id.  In general, the opinion

24  of a treating physician is entitled to greater weight than that of a non-treating

25  physician because the treating physician "is employed to cure and has a greater

26  _____

27         [4]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to

28  draw bright line distinguishing treating physicians from non-treating physicians; relationship is
    better viewed as series of points on a continuum reflecting the duration of the treatment
    relationship and frequency and nature of the contact) (citation omitted).

1    opportunity to know and observe the patient as an individual." <u>Morgan v.</u>

2    <u>Commissioner of Social Security Administration</u>, 169 F.3d 595, 600 (9th Cir.

3    1999) (citing <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1230 (9th Cir. 1987)).

4        The treating physician's opinion is not, however, necessarily conclusive as

5    to either a physical condition or the ultimate issue of disability. <u>Magallanes v.</u>

6    <u>Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989) (citing <u>Rodriguez v. Bowen</u>, 876 F.2d

7    759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not

8    contradicted by another doctor, it may be rejected only for clear and convincing

9    reasons. <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal

10   quotations omitted). The ALJ can reject the opinion of a treating physician in

11   favor of a conflicting opinion of another examining physician if the ALJ makes

12   findings setting forth specific, legitimate reasons for doing so that are based on

13   substantial evidence in the record. <u>Id.</u> (citation and internal quotations omitted);

14   <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by

15   setting out detailed and thorough summary of facts and conflicting clinical

16   evidence, stating his interpretation thereof, and making findings) (citations and

17   quotations omitted); <u>Magallanes</u>, 881 F.2d at 751, 755 (same; ALJ need not recite

18   "magic words" to reject a treating physician opinion – court may draw specific

19   and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer

20   his conclusions." <u>Embrey v. Bowen</u>, 849 F.2d 418, 421-22 (9th Cir. 1988). "He

21   must set forth his own interpretations and explain why they, rather than the

22   [physician's], are correct." <u>Id.</u> "Broad and vague" reasons for rejecting the

23   treating physician's opinion do not suffice. <u>McAllister v. Sullivan</u>, 888 F.2d 599,

24   602 (9th Cir. 1989).

25        **4.**     **Analysis**

26       In this case, the ALJ properly considered Dr. Khajavi's opinions and

27   incorporated such doctor's findings into the ALJ's residual functional capacity

28   assessment. First, the ALJ expressly stated that she had considered all of the

1   evidence in the record.  (AR 14, 15, 16).   Second, the ALJ also expressly

2   referenced Dr. Khajavi's assessments (referring to Dr Khajavi as "the treating

3   source").  (AR 16, 18) (citing Exhibit 8F [AR 222-30]).  The ALJ also expressly

4   incorporated the First ALJ's discussion of the medical evidence which likewise

5   specifically referenced Dr. Khajavi's assessments.  (AR 17, 466) (citing Exhibit

6   8F [AR 222-30]).[5]  Third, the ALJ specifically discussed particular observations

7   and opinions of such doctor.  The ALJ noted that Dr. Khajavi had assessed

8   plaintiff's functioning as being "fair" in key areas but had not further quantified or

9   otherwise explained the degree of impairment.  (AR 18).  The ALJ nonetheless

10  reasonably inferred from the accompanying medical records that this referred to

11  the possibility, due to such plaintiff's mental deficiencies, that plaintiff might be

12  easily overwhelmed in a high stress or fast paced job.  (AR 18).  Rather than

13  rejecting Dr. Khajavi's assessment, the record reflects that the ALJ expressly

14  "accommodated those limitations" into the ALJ's residual functional capacity

15  assessment.  (AR 18).  As noted above, the ALJ determined that plaintiff could not

16  work in a high stress or fast paced jobs.  Although the ALJ did not individually

17  discuss Dr. Khajavi's opinion that confusion resulted from blood sugar level

18  fluctuations, the ALJ expressly relied upon the assessment of Dr. Rath who did

19  specifically refer to, and take into account such opinion.  (AR 16, 669).  Moreover,

20  although the ALJ did not engage in a detailed discussion of each of Dr. Khajavi's

21  discrete opinions, the impairments noted by Dr. Khajavi are incorporated into and

22  consistent with the ALJ's residual functional capacity determination.

23  Accordingly, any error by the

24  ///

25

26      [5]The First ALJ stated:  "In a September 2002 evaluation the claimant's psychiatrist [Dr.
    Khajavi] concluded the claimant had major depression but he restricted her from high stress
27  situations only.  He stated the claimant may be easily overwhelmed in high stress jobs due to
    depression.  She would become easily confused.  She also had somewhat impaired concentration
28  but he concluded she could understand and follow simple directions.  (Exhibit 8F, p.4)."  (AR
    466).

1  ALJ in not expressly discussing each of Dr. Khajavi's discrete findings was
2  harmless.

3  **B.    The ALJ Did Not Err In Failing Further to Develop the Record**

4  Plaintiff also alleges that the ALJ failed properly to develop the record
5  regarding Dr. Khajavi's opinion.  (Plaintiff's Motion at 2).  Plaintiff contends that
6  the ALJ's observation, noted above, that Dr. Khajavi did not further quantify or
7  explain his/her "fair" assessment of plaintiff's functioning in multiple areas, was
8  essentially equivalent to a determination that the record was ambiguous or
9  inadequate, thereby triggering the ALJ's obligation to further develop the record.
10  (Plaintiff's Motion at 4).   This Court disagrees and finds the ALJ was not required
11  further to develop the record.

12  **1.    Relevant Law**

13  An ALJ in a social security case has an independent duty fully and fairly to
14  develop the record.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir.
15  2001) (citations omitted); see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir.
16  2005) (ALJ has special duty fully and fairly to develop record and to assure that
17  claimant's interests are considered).  "An ALJ's duty to develop the record further
18  is triggered only when there is ambiguous evidence or when the record is
19  inadequate to allow for proper evaluation of the evidence."  Mayes v. Massanari,
20  276 F.3d 453, 460 (9th Cir. 2001) (citing Tonapetyan, 242 F.3d at 1150).  "The
21  ALJ may discharge this duty in several ways, including:  subpoenaing the
22  claimant's physicians, submitting questions to the claimant's physicians,
23  continuing the hearing, or keeping the record open after the hearing to allow
24  supplementation of the record."  Tonapetyan, 242 F.3d at 1150 (citations omitted).

25  **2.    Analysis**

26  In this case, the ALJ's duty to develop the record further was not triggered.
27  The ALJ's observation that Dr. Khajavi's "fair" assessment was "not further
28  quantified or otherwise explained," was not an indication that the record was

1   ambiguous or inadequate.  Rather, as noted above, the ALJ reasonably inferred

2   from the accompanying medical records, that Dr. Khajavi was referring to the

3   possibility that plaintiff might be easily overwhelmed in a high stress or fast paced

4   job.  (AR 18).   There was ample evidence in the record regarding plaintiff's

5   mental impairments.  The record was adequate to allow for a proper evaluation of

6   Dr. Khajavi's opinion and plaintiff's mental impairments and limitations.

7   Accordingly, the ALJ was not required further to develop the record.

8              **C.     The ALJ Did Not Materially Err Relative to the Opinion of**

9                      **Plaintiff's Vocational Rehabilitation Counselor**

10          Plaintiff further alleges that the ALJ failed properly to consider a report

11   prepared by a vocational counselor regarding plaintiff's condition.  (Plaintiff's

12   Motion at 5-6).  This Court disagrees and finds that the ALJ did not materially err

13   in connection with the ALJ's consideration of such opinion.

14                      **1.     Relevant Facts**

15          A vocational rehabilitation counselor created a two page document (the

16   "Report") so that plaintiff could be eligible for special services at a junior college

17   she was attending.  (AR 232-33).  On the first page, the counselor described

18   plaintiff's disability that warranted special services, indicating plaintiff had insulin

19   dependent diabetes and major depression, which she treated with multiple

20   specified medications.  (AR 232).  He further stated that plaintiff was limited by

21   her condition because she had to test her blood sugar and take insulin.  (AR 232).

22   The counselor checked boxes indicating that plaintiff's disability was

23   permanent/chronic, but was not observable.  (AR 232).  The counselor referred to

24   an attached medical verification which constitutes the second page of the Report.

25   (AR 232-33).  The medical verification form, completed by a social worker at Dr.

26   Khajavi's Clinic, contains a summary consistent with, and duplicative of the

27   ///

28   ///

13

1   opinions of Drs. Khajavi and Knight, noted above.[6]  (AR 233).  Specifically, the
2   social worker indicated:   Plaintiff began treatment in January 2000 for major
3   depression, recurrent, and took Zoloft and received counseling for her condition.
4   (AR 233).  Plaintiff's prognosis was good.  Plaintiff had reservations regarding
5   potential future employers' understanding of her needs associated with being an
6   insulin dependant diabetic.  (AR 233).

7                          **2.    Analysis**

8           The ALJ indicated multiple times that she had considered all of the evidence
9   in the record in reaching her decision, but did not specifically reference the
10  Report.  (AR 14, 15, 16).  An ALJ is not required to discuss every piece of
11  evidence in interpreting the evidence and developing the record.  <u>Howard v.</u>
12  <u>Barnhart</u>, 341 F.3d 1006, 1012 (9th Cir. 2003).  Instead, an ALJ must only explain
13  why "significant probative evidence has been rejected."  <u>Vincent v. Heckler</u>, 739
14  F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted).

15          First, the Report does not constitute significant probative evidence.  To the
16  extent the Report is based upon the observations and opinions of a vocational
17  counselor and a social worker, such individuals are not acceptable medical
18  sources.  <u>See</u> 20 C.F.R. §§ 404.1513(a), 416.913(a).  Rather, such individuals at
19  most constitute "other sources."   <u>See</u> 20 C.F.R. §§ 404.1513(d), 416.913(d).
20  Although such other source opinions generally may used to show the severity of a
21  claimant's impairments, and their impact on her ability to work, here, the Report is
22  merely cumulative of other evidence considered by the ALJ and has no
23  independent significance or probative value.  Accordingly, the ALJ did not err in
24  failing to discuss the observations contained in the Report.

25          Second, any error by the ALJ in failing to discuss the Report was harmless
26  both because the Report is cumulative of other evidence considered and addressed
27  ///

28  _____

        [6]The social worker and Dr. Khajavi's Clinic have the same address.  (AR 226, 230, 233).

                                    14

by the ALJ, and because the Report's conclusions are not inconsistent with the ALJ's residual functional capacity assessment.

**D.    The ALJ Did Not Err In Its Questions to the Vocational Expert**

Plaintiff also alleges that the ALJ erroneously failed to pose a complete hypothetical question to the vocational expert (the "VE").[7]  (Plaintiff's Motion at 7).  She argues that additional limitations identified by Dr. Khajavi and in the Report should have been included in the hypothetical questions to the VE. (Plaintiff's Motion at 7-9).  This Court disagrees and finds that the ALJ posed proper hypothetical questions to the VE by including all of plaintiff's limitations and restrictions supported by the record.

///

---

[7]Plaintiff refers to the following exchange between the ALJ and the VE:

ALJ:    Hypothetically assume a 62 year old individual with a high school education and couple years of college and the work experience that's outlined by yourself in your report and testimony today.  This individual can occasionally lift 20 pounds, frequently lift 10 pounds.  She is precluded from climbing ladders, ropes, or scaffolding, or from balancing. She's also precluded from working at unprotected heights, around dangerous or fast moving machinery.  She can occasionally climb stairs, bend, stoop, kneel, crouch, or crawl.  She can perform jobs where hyper vigilance is not required.  She should not be in charge of safety operations of others.  She's precluded from jobs that require intense interpersonal interaction.  She should not supervise others.  She's precluded from jobs requiring high production quota or rapid assembly work.  However, she can work a moderate pace with moderate supervision, as described by Dr. Rath.  Moderate interaction with peers, co-workers, and the public, as described by Dr. Rath.  Based on this hypothetical can this individual do any of the claimant's past relevant work?

VE:    Yes, I would say the jobs, as typically performed, in both the regional and national economy should be able to be performed within that hypothetical.  But, based upon the claimant's testimony, not in her particular situation . . . .

ALJ:    [I]f she were unable to work eight hours a day 40 hours a week and would miss more than 2 days of work per month due to impairments, any jobs?

VE:    There would be no jobs that could be sustained, Your Honor.

(AR 680-81, 682).

15

1    A hypothetical question posed by an ALJ to a vocational expert must set out
2  all the limitations and restrictions of the particular claimant.  <u>Light v. Social</u>
3  <u>Security Administration</u>, 119 F.3d 789, 793 (9th Cir.), <u>as amended</u> (1997) (citing
4  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1044 (9th Cir. 1995)); <u>Embry</u>, 849 F.2d at 422
5  (citation omitted).  However, an ALJ need not include limitations which are not
6  supported by the record.  <u>See</u> <u>Magallanes</u>, 881 F.2d at 756.

7    Here, the Court concludes that the ALJ properly considered all evidence,
8  and properly included the limitations and restrictions that were supported by the
9  record in the residual functional capacity assessment.  The residual functional
10  capacity assessment, in turn, was properly incorporated into the hypothetical
11  question posed to the VE.

12    As the ALJ posed a proper hypothetical question to the VE by including all
13  of plaintiff's limitations and restrictions supported by the record, plaintiff is not
14  entitled to a reversal or remand on this basis.

15  **V.    CONCLUSION**

16    For the foregoing reasons, the decision of the Commissioner of Social
17  Security is affirmed.

18    LET JUDGMENT BE ENTERED ACCORDINGLY.
19  DATED:   September 22, 2008

20                                        _____
                                               /s/
21                                        Honorable Jacqueline Chooljian
22                                        UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28

16